All right. Welcome back, Mr. Fujimoto. Good to see you again. Your Honor, for the record, Wesley Fujimoto representing respondents. My arguments will be brief. I think a lot of the facts are pretty clear in the brief and with both arguments raised by the parties. What I'd like to touch upon is the district court's order that the NLRB was likely to prevail on the unfair labor practice charge alleging a unilateral change on the policy on access and access of the union officials to the property. Before you begin that, if I might, I'd like you to give some comment to my standard of review here. I think you noted my comments about standard review in the last case. I was taking you to the facts and trying to get you there. This is a preliminary injunction you're fighting, isn't it? Correct, Your Honor. On what standard should I review that preliminary injunction? Our position is that it's the erroneous standard, Your Honor. Obvious discretion. Obvious discretion, yes. I even have to go so far as to say that since the board got the directors okay to do this, it might even be some deference to them, wouldn't there be? I believe that's your argument, Your Honor. Do you agree with that? No, I don't, Your Honor. I mean, I looked at the case law, and I'm trying to figure out why that's not true. I mean, already, abuse of discretion is pretty tough for you. But here, the board just doesn't go forth and do this stuff without going to the director first, right? That's correct, Your Honor. And so they get the director. The director says, I think you ought to go forth with this. So the director is going to be the ultimate. That seems to give a little more deference to what the board does, doesn't it? Well, I think in terms of the presentation of what the board is considering, our contention is that in terms of what is considered in the decision by the district court and what's presented to the district court, that that is what our position is, and that even though the board had allowed the Tenjie injunction to proceed to the court, that there's still two sides to the story. Well, I know there's two sides, but in this particular situation, given that this is really an agency decision that we get involved with, with the agency doing what they need to do, I'm just trying to make sure how I'm to review this. And abuse of discretion, I pretty well give the district court quite a wide standard here. And now I'm at the board. Why the board came here in the first place seems to me to give it an extra wide standard. I see where Your Honor is coming from, but again, our position is that in terms of the evidence that was reviewed and presented, that we still believe that the decision by the district court in terms of ordering the injunction was an error. So are you contending that the district court error is a matter of law in any way? No, Your Honor, it's the factual, yes. And here we have a long-term employee, an active union member, a written verbal warning, and a termination, correct? That's correct. Didn't he get terminated twice too? No, he wasn't hired the first time. Okay, he wasn't rehired, but then he gets, yeah, for the toilet paper and the bug spray? That was the verbal written warning, and the termination was for this particular injunction. Do you really dispute that the directors made a primary patient case? I don't believe we disagree with that. We believe that we presented evidence. They made a primary patient case for this. Yes, and we presented evidence that showed otherwise in terms of that the hotel followed what it believed, although unwritten, believed to be policies with respect to the safety issues and also for the violation of house rules that are written. Is it really true that there are no established rules regarding the stocking of housekeeping closets? No written policies, yes. Is it really true that no one ever told the employee concerning these rules? It's done through the process in training and also in the one-day shadowing. Is it really true nobody ever told the employee concerning these rules? Prior to the incident, no. And is it also true that he didn't know he was not to place the toilet paper on the top shelf? No, that's what he testified to. However, he also testified that he understood that the placement of the toilet paper on the top shelf was unsafe. And after he was told he did exactly what he was supposed to do? That's the testimony I have. I guess obviously the hotel has lost many times already in all of this. And it's been to the Ninth Circuit previously on, I think, the temporary injunction, correct? That's correct. And they affirmed at that point. Is there anything in any of the prior cases that would be law of the case in terms of this evaluation? I mean, obviously when you're looking at the likelihood of success, they've never won on anything. But I realize you have to – is it because all of these on this preliminary injunction happened after all the others? That's correct, Your Honor, because we're looking at – So do we have to erase all of what happened before and just look at what happened? Well, I think in terms of the specific employment actions that were done, we believe that they were justified in terms of the actions taken. The NLRB and the judge put a different spin on it because of the history. But if you look at the specific facts in terms of the business decisions that are related to the disciplinary action taken with respect to employees and other information such as the financial – Do we ignore the fact that this employee is a union organizer? Well, we've admitted that he was a union supporter, yes. But you say we should just look at these facts and whether what was done was justified. And whether the discipline for putting the toilet paper on the wrong shelf was justified. But how do we – and yet you say that the fact is his history, and the history should be ignored. How – I don't know what that means. Well, the history in the sense of the – that anything that the employer does is presumed to have anti-union animus, which is what seemed to be argued by the board in terms of because of this past history, no matter what the employer does, no matter how it explains it, it's because of anti-union animus. But I guess with this – with Villanueva, we can't really just – we have to look at his entire history there, do we not? In terms – we admit that it's an anti-union – he's a union supporter. Well, but also to the fact that he wasn't rehired and then he was ordered back. I mean, that would still be part of what we would have to – you know, that's his whole contact with the hotels. Well, that's his employment history with the hotels. So then when you look at his likelihood of success on – then he's terminated for the bug spray and the toilet paper, I guess, because he – I guess you need training for bug spray, I guess, something. Or are you contending that he stole the bug spray? Both, that it was a commercial-grade bug spray and therefore he needed training and also that the bug spray could not be located after he had used it or claimed to have used it at the hotel rooms. And our contention is that the – as far as his story goes with respect to the use of it, we believe the evidence showed that the – he couldn't have done it because of the contradiction in the testimony as far as occupancy of the hotel rooms. But I guess isn't it just as possible that in terms of when you're talking about abuse of discretion, that the room was sprayed by the guest – was sprayed but the guest was not moved or elected not to move and that, you know, he was responding to a complaint of a cockroach and just tried to deal with it? Well, if – The court could have believed that, right? Well, the hotel's policy is that if there is spray, the hotel guest is moved. And that was contained in the evidence. And there was no evidence or no indication in the hotel's records that in terms of the rooms that were specified, that guests were moved to another location. Therefore, the conclusion was that there was no spraying of those rooms, which contradicted what Mr. Villanueva had stated to the hotel. Is it also true that when the employee has past practice of providing union representatives access to the facility, that it can't change the practice without first notifying and bargaining with the unions? No, Your Honor. Well, if that's the rule, is it not? Yes, Your Honor. And as I understand it, the facts here would suggest that that didn't happen? It's the application of the rule, Your Honor. And that was the distinction that we were trying to make before the court, that it's a matter of the disruption of the operations of the hotel, which is part of the agreement. And therefore, if there is a disruption on the hotel property by the union officials who requested access, they could be banned. I understand your argument. I guess my trouble is, and I've asked you these questions because you've picked the first, proving the likelihood of success. And you're asking me to say that the district judge abused his discretion based on the answers you've given me. This isn't just that I have a different view, but abused his discretion. When you don't dispute the director had a prima facie case, you don't dispute that the employee didn't have any established rules. As soon as you told him what to do, he did what he had to do. You know he was a union person. You don't dispute that you generally have to give notice to the union before you can throw him off your property when you've let him on before. I guess I'm having a tough time with this discretion abuse. It's not notice to the union with respect to the access. It's regarding the application of that policy. And in terms of the discussion with the union that did occur, and that's when the permanent ban of the union officials for violating the access policy had taken place. Can I just ask you one question? This is an appeal from a preliminary injunction. Is that correct? Yes. A mandate and a resolution of the unfair labor practice charges to be pulled forward, right? That's correct. Are we going to be here in another year and a half on the challenge to the board's resolution of the unfair labor practice? I hope you say yes, you three have got a compliment. I see the look of amazement from one judge with a joke. I don't know. I don't know. Would you like to reserve the balance of your time for rebuttal? Yes, please. Thank you. Good morning. Good morning. May it please the court, Katherine Trafton for the Acting General Counsel. I think that Judge Schroeder honed in on the issue, and I think Judge Smith and Judge Callahan as well. It's really about the standard that the court is reviewing the district court's grant of the injunction. Counsel acknowledged in response to the court's question that he's not raising any issues of law. He's not arguing that the district court erred as a matter of law, that it's purely factual questions. And the standard here of review is the abusive discretion standard, and that means that unless there's a clearly erroneous finding of fact or an erroneous legal standard, there's no basis to overturn the district court. And that is the case here. There is no clearly erroneous finding of fact. The district court had before it the record of the administrative law judge's hearing, as well as the decision which came after the injunction was filed. The district court reviewed that and made a determination about the likelihood of success. The district court was not determining whether ultimately the claim had been stated, but whether there was a likelihood of success. And in determining that, relied on in part the record from the administrative law judge hearing and the administrative law judge's decision. It is important to note that with respect to all of the issues that the hotel has raised, they go to credibility. They go to whose side do we believe. Those credibility determinations are given deference by the board, and then the board would be given deference by the court on enforcement. Right. Your adversary's position is essentially that the district court didn't weigh the evidence the right way. And your position is that that's not appropriate. Well, I don't believe that that's the standard. The standard is whether the board has presented some evidence and some arguable legal theory. What's the strongest case supporting your position in the legal context that's anywhere close to what we have here? Well, what we have here is Frankel v. HTH 1, which was the case that this court issued. But it's not really law of this case, is it? No. It's sort of the elephant in the room. Well, the way I see it is that it provides a beautiful framework for analyzing the facts of this case. Yes, there are new facts, of course, because we had to request another injunction. But the framework is laid out in the first case. So do some of the facts then cross over to this one? They do. As you pointed out earlier, Mr. Villanueva was fired twice. The board did not view it as a failure to rehire. They viewed it as a termination, not a failure to rehire. But in any event, he was let go based on union animus once, and then he was back for a very short period of time, three weeks before the employer started targeting him again, and then within a couple of months was terminated again based on union animus. So, of course, I think that you have to view this as only one chapter in the context of a very long story of an employer who has remarkably pursued its efforts to avoid arguing with the union. So it's hard to not view it in the broader context, but here on these specific facts. So, I mean, basically you're saying it's not law of the case, but since some of the facts cross over, it certainly would give a district court some indication that you might have a likelihood of success. Indeed. In particular, when the violations are the exact same violations, in this case we have a unilateral change involving the employer changing the number of rooms assigned to housekeepers. Well, that is, in fact, precisely the same allegation that was included in the first complaint, in the first injunction, and so the court has, in essence, spoken to that. But we don't need to rely on that as the law of the case, but it does provide a very good framework for analyzing the new facts as they exist in this case. When I read some of the cases, it seems to be that it's not my concern in making a determination on a preliminary injunction whether the injunction would do what the board may do, but it is my concern that I preserve the status quo by entering in the injunction. How does entering this injunction preserve the status quo? Well, it's the only thing at this point that prevents the employer from continuing an unlawful course of conduct. By reinstating a union activist who is a member of the bargain committee who has been terminated, that allows some movement towards the status quo in the sense that workers are able to see that their co-worker, who was unlawfully terminated, has returned to the workplace. If the employer is required by the injunction to reinstate the conditions that existed before it unilaterally changed them, again, it puts the parties somewhat closer to the status quo because the employees then don't view it as, well, the employer can do whatever it wants whenever it wants. They understand that those conditions are, in effect, by law. You argue that the discharge of union supporters like Villanueva can create irreparable harm to the collective bargaining process and result in loss of support for the union. Here, the hotel claims that the employees no longer support the union and have signed a disaffiliation petition. Assuming, just for purposes of argument, that the union has lost support of a majority of employees, how does that figure into the analysis of irreparable harm? I think it's impossible, given the 10-year history of unlawful conduct by this employer, to ever make an assessment. I couldn't honestly make an assessment of employees' support for the union because there has been an unbelievably long and dogged effort to avoid legal obligations. So how one could assess the true state of employee support for the union at this point is a difficult question. I'm not sure that it can be done. Okay. Thank you. I don't believe the panel has any additional questions. Thank you. Thank you for your argument. Your Honor, unless the panel has questions of me, I'll rest on my argument. There do not appear to be additional questions. We thank you both for your argument. This matter will stand submitted, and this court is in recess for a week. Thank you. Thank you. Thank you.
judges: Schroeder, Callahan, Smith